**Serguei Olegovich EMELKIN, Petitioner,**

v.

**John ASHCROFT, Attorney General; Immigration and Naturalization Service, Respondents.**

No. 03–3003.

United States Court of Appeals, Sixth Circuit.

April 13, 2004.

Timothy P. Coode, Knoxville, TN, for Petitioner.

Christopher C. Fuller, Blair O'Connor, James A. Hunolt, Janice K. Redfern, U.S. Department of Justice, Immigration Litigation, Civil Divison, Washington, DC, for Respondents.

Before RYAN, DAUGHTREY, and CLAY, Circuit Judges.

## ORDER

Serguei Olegovich Emelkin, a citizen of Moldova currently residing in Tennessee, petitions through counsel for review of an order of the Board of Immigration Appeals (BIA) affirming an immigration judge's decision denying his application for asylum pursuant to 8 U.S.C. § 1158. The parties have waived oral argument, and this panel unanimously agrees that oral argument is not necessary in this case. Fed. R.App. P. 34(a).

Emelkin was born in 1976 in the area of the Soviet Union which became independent Moldova. He is ethnically Russian, while the majority of the population of Moldova is Romanian, as the territory was conquered and annexed by the Soviet Union from Romania. In 1990, Moldova gained its independence. In 1993, Emelkin came to the United States as an exchange student. He overstayed his visa and applied for asylum, alleging that he feared persecution in Moldova based on his ethnicity. A hearing was held before an immigration judge (IJ), at which Emelkin recounted that his family began receiving threatening anonymous phone calls in the late 1980's, which continued to this day. He also related three instances in 1990 or 1991 in which he was assaulted on his way home from school. Once, he and a friend were thrown off a trolley for speaking Russian. Another time, he was beaten up by three members of a pro-Romanian party, resulting in a broken arm and dislocated disc. Finally, he was attacked by a man at a bus stop, apparently based on his Russian appearance, and received a broken nose. Emelkin also testified that his parents had lost their former jobs because they could not speak Romanian. His father was then working in a grocery store

and his mother was tutoring students in English. At the conclusion of his testimony, Emelkin sought a thirty-day continuance to submit translations of newspaper articles which he had originally submitted in support of his application and which had been lost. Emelkin's counsel had requested them prior to the hearing in order to have them translated, but counsel for the respondent did not locate them until the hearing itself. The IJ was ready to issue his decision and not inclined to grant a continuance, but allowed Emelkin to testify as to the contents of the articles. Emelkin indicated that the articles did not contain any information about him personally, but described the general discrimination faced by ethnic Russians in Moldova. The IJ denied the continuance and issued his decision denying asylum and withholding of removal, but granting voluntary departure. The BIA affirmed this decision without opinion.

This court granted Emelkin's motion for a stay of removal. In his brief, Emelkin argues that the IJ apparently found his testimony lacking in credibility without any specific reason, that he should have been granted a continuance to allow him to submit a translation of his supporting documentation, and that he established past persecution and a well-founded fear of future persecution. Respondent argues that the IJ did not make a credibility determination, that this court lacks jurisdiction to review the denial of a continuance under 8 U.S.C. § 1252(a)(2)(B)(ii), and that the petition for review should be denied.

A petition for review of a decision denying asylum may be granted only where the evidence is so compelling that no reasonable factfinder could fail to find the requisite fear of persecution. *Klawitter v. INS*, 970 F.2d 149, 152 (6th Cir.1992). Upon careful consideration, we conclude that the record in this case fails to meet this standard.

Initially, Emelkin argues that the IJ erred in finding his testimony lacking in credibility without giving any reason. However, the IJ made no finding that Emelkin's testimony lacked credibility. He did state that Emelkin's story had insufficient detail, apparently referring to his failure to remember the dates of the three assaults he described. Because no adverse finding on credibility was made, we will presume that the IJ found Emelkin's story credible. *Kataria v. INS*, 232 F.3d 1107, 1114 (9th Cir.2000).

Emelkin also argues that he should have been granted a continuance to allow him to submit translations of the supporting documentation the government misplaced. Respondent contends that we lack jurisdiction to review the denial of a continuance under 8 U.S.C. § 1252(a)(2)(B)(ii), which provides that no court has jurisdiction to review a discretionary decision of the Attorney General, other than a decision denying asylum. However, aliens are entitled to due process in removal proceedings, *Zadvydas v. Davis*, 533 U.S. 678, 693, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001), which includes a full and fair hearing. *Huicochea–Gomez v. INS*, 237 F.3d 696, 699 (6th Cir.2001). Therefore, the exclusion of evidence, which is what the denial of a continuance in this case amounted to, can be reviewed for fundamental fairness. *Ladha v. INS*, 215 F.3d 889, 905 (9th Cir.2000). The denial of Emelkin's motion did not deny him a fair hearing in this case, because the IJ accepted Emelkin's explanation that the newspaper articles would confirm his testimony that ethnic Russians were discriminated against in Moldova.

Assuming the truth of Emelkin's testimony, and that it was corroborated by the documentation he attempted to submit, the evidence in this case nevertheless did not compel a finding of persecution. An alien's mistreatment must be shown to be substantially more grievous than general hostility between competing ethnic groups to rise to the level of persecution. *Singh v. INS*, 134 F.3d 962, 967 (9th Cir.1998). More importantly, Emelkin failed to establish that the mistreatment he experienced was condoned by the Moldovan government, or that the government was unable or unwilling to control those responsible. *Id.* at 967 n. 9. Emelkin testified that he did not report any of the incidents he described to the police. Finally, the fact that Emelkin's parents and brother have continued to live in Moldova for over ten years since the events Emelkin described, and have not been harmed, does not support his claim to a well-founded fear of persecution if he returns. *See Gumbol v. INS*, 815 F.2d 406, 413 (6th Cir.1987). Because the evidence submitted did not compel a finding of persecution, the petition for review is denied.