**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0222n.06
Filed: March 28, 2007

**No. 05-4555**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | |
|---|---|
| ASAAD ISHO HERMEZ, ) | |
| ) | |
| Petitioner-Appellant, ) | |
| ) | ON PETITION FOR REVIEW OF |
| v. ) | AN ORDER OF THE BOARD OF |
| ) | IMMIGRATION APPEALS |
| ALBERTO GONZALES, ATTORNEY GENERAL, ) | |
| ) | |
| Respondent-Appellee. ) | |

**Before:** **BOGGS, Chief Judge; BATCHELDER, Circuit Judge; GRIFFIN, Circuit Judge.**

**BOGGS, Chief Judge.** Asaad Hermez petitions for review of an order of the Board of Immigration Appeals ("BIA") denying his application for cancellation of removal. Because we lack jurisdiction to decide the merits of Hermez's substantive claim, and because his constitutional claims fail, we deny the petition for review.

**I**

Asaad Isho Hermez is a 44-year-old native and citizen of Iraq. He arrived in the United States on August 24, 1982 on a non-immigrant visa. His authorized period of stay expired on August 31, 1982. On October 28, 1997, Hermez was served with a notice to appear, charging him with being subject to removal. Hermez conceded his deportability and applied for asylum and related relief. On January 7, 2002, an Immigration Judge ("IJ") found Hermez deportable, denied his

applications for asylum and related relief, and granted him voluntary removal. The BIA affirmed

the IJ's decision on May 6, 2003. Hermez did not petition for review.

On May 27, 2003, Hermez filed a motion to reopen, alleging ineffective assistance by his

former counsel in failing to apply for cancellation of removal under Section 240A(b) of the

Immigration and Naturalization Act ("INA"). 8 U.S.C. § 1229b(b). The BIA granted Hermez's

motion to reopen and remanded to the IJ for consideration of his application for cancellation of

removal, which argued that his removal would result in "exceptional and extremely unusual

hardship" to his lawful resident mother. 8 U.S.C. § 1229b(b)(1).

On May 6, 2004, attorney Marisa Petrella filed an "Emergency Motion to Adjourn" Hermez's

hearing that was scheduled for May 13th. Petrella stated that she had been retained by Hermez on

May 3, 2004, that the date for submitting additional exhibits had already passed, and that she needed

time to review Hermez's cancellation application and prepare for the hearing. Petrella also

submitted a stipulation signed by both Petrella and Hermez's former counsel, Abbo, in which Abbo

agreed to no longer represent Hermez in his immigration proceedings. The IJ granted a motion from

Abbo to withdraw, permitted Petrella to serve as Hermez's counsel, and denied the motion for

adjournment. Petrella filed another "Emergency Motion" on May 12, 2004 asking the IJ to accept

additional evidence and accept some minor changes to the cancellation application. The IJ granted

this motion.

The IJ held a hearing on Hermez's application for cancellation on May 13, 2004. The IJ was

sitting in Buffalo and conducted the hearing in Detroit by video conference. Hermez, his family, his

witnesses, and his lawyer were all in Detroit. In an oral opinion the same day, the IJ denied

Hermez's application for cancellation of removal, finding that Hermez had not demonstrated that his removal would result in exceptional and extremely unusual hardship to his mother.  On November 15, 2005, the BIA adopted and affirmed the decision of the IJ.

## II

Hermez seeks review of the BIA's adoption and affirmance of the IJ's opinion denying Hermez's application for cancellation of removal.  We generally have jurisdiction to review final orders of removal.  *Pak v. Reno*, 196 F.3d 666, 670 (6th Cir. 1999); 8 U.S.C. § 1252.

We do not, however, have jurisdiction to review Hermez's claim that the IJ abused his discretion in finding that Hermez failed to establish the requisite exceptional and extremely unusual hardship under Section 240A(b) of the INA, 8 U.S.C. § 1229b(b).  Section 242(a)(2)(B)(i) of the INA, 8 U.S.C. § 1252(a)(2)(B)(i), provides that "no court shall have jurisdiction to review . . . any judgment regarding the granting of relief under section . . . 1229b of this title."  While colorable constitutional and legal claims are preserved by 8 U.S.C. § 1252(a)(2)(D), review of discretionary decisions of the Attorney General made in non-asylum immigration cases is barred.  We have held that an IJ's determination that a petitioner did not prove that his deportation would result in "extreme hardship" is such a discretionary decision.  *Valenzuela-Alcantar v. INS*, 309 F.3d 946, 950 (6th Cir.

2002).[1] Therefore, we have no jurisdiction to hear Hermez's claim that the IJ abused his discretion by finding that Hermez failed to establish the necessary exceptional and extremely unusual hardship.

### III

Hermez also presents several constitutional claims. We have jurisdiction to review Hermez's colorable constitutional and legal claims. *See* 8 U.S.C. § 1252; *Martinez-Rosas v. Gonzales*, 424 F.3d 926, 930 (9th Cir. 2005) ("To be colorable . . . the alleged violation need not be substantial, but the claim must have some possible validity.") We review these claims *de novo*. *Castellano-Chacon v. INS*, 341 F.3d 533, 552-53 (6th Cir. 2003); *Mikhailevitch v. INS*, 146 F.3d 384, 391 (6th Cir. 1998) ("This court reviews *de novo* an alleged due-process violation based upon the manner in which an IJ conducts a deportation hearing.").

### IV

Aliens facing removal are entitled to due process. *Zadvydas v. Davis*, 533 U.S. 678, 693-94 (2001). This includes the right to "a full and fair hearing, although the IJ is entitled to broad discretion in conducting that hearing." *Castellano-Chacon*, 341 F.3d at 553. For a petitioner to prevail on a due process claim, he must demonstrate not only error, but also "substantial prejudice"

---

[1] As other circuits have noted, the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231, which added 8 U.S.C. § 1252(a)(2)(D) (which preserves appellate court jurisdiction over legal and colorable constitutional claims), did not restore our jurisdiction to review an IJ's discretionary "exceptional and extremely unusual" hardship decision. *See Meraz-Reyes v. Gonzales*, 436 F.3d 842, 843 (8th Cir. 2006); *De La Vega v. Gonzales*, 436 F.3d 141, 146 (2d Cir. 2006); *Mireles v. Gonzales*, 433 F.3d 965, 968-69 (7th Cir. 2006); *Martinez-Rosas v. Gonzales*, 424 F.3d 926, 929-30 (9th Cir. 2005).

– namely that the alleged violation affected the outcome of the proceedings. *Gishta v. Gonzales*, 404 F.3d 972, 979 (6th Cir. 2005).

Hermez first contends that the IJ's denial of his May 6, 2004, Motion to Adjourn violated his due process rights. Hermez argues that because he had changed counsel on May 3, 2004, and the due date for submitting supporting documents had already passed, that the denial of his motion amounted to an exclusion of evidence. *See Emelkin v. Ashcroft*, 97 F. App'x 27, 29 (6th Cir. 2004) (holding that when the denial of a continuance amounts to an exclusion of evidence, the denial can be reviewed for fundamental fairness). Hermez argues that he could have submitted evidence that supported his claim of his mother's poor health and fragile state of mind.

Hermez has not shown that it was error for the IJ to deny the continuance. He has not argued that any of his additional evidence was unavailable prior to the deadline for submitting evidence, nor has he shown that his late change of counsel was prompted by anything other than his own wishes. If the change was problematic, it was as a result of his own decisions. Further, Hermez has not shown substantial prejudice. His original counsel submitted fifteen pages of exhibits along with his cancellation application and filed over fifty pages of additional evidence on the deadline for submission of new evidence. Further, the IJ accepted eighty pages of further evidence from Hermez's new counsel on May 12, 2004, after the deadline for submission of evidence had passed, and one day before Hermez's hearing.

Second, Hermez argues that the failure of the Immigration Court to supply his new counsel with a copy of his court file, a few days prior to his hearing, denied him his right to a fair hearing. According to Hermez, the file was transported from Detroit to Buffalo, where the IJ sat, and this

precluded any access to the file during the time of transit. Further, Hermez states that his new counsel was unable to contact his old counsel and obtain a copy of the file. Hermez reiterates his argument that the IJ violated his due process rights by failing to grant a continuance.

Again, Hermez's decision to change counsel a week before the hearing was entirely his own. Further, Hermez's new counsel submitted a joint stipulation signed by both her and Hermez's old counsel regarding the substitution of counsel only one week prior to the hearing. Hermez's new counsel clearly had the opportunity to obtain the old counsel's file at that time. In addition, beyond vague claims, Hermez has not indicated how he was prejudiced by his counsel's failure to obtain the court file. The file consisted mainly of the records of his asylum proceedings – records not clearly relevant to his cancellation of removal claim. Hermez points to nothing in the court file that could have altered the result of his cancellation of removal proceeding.

Third, Hermez argues that his right to a fair hearing was violated because it was conducted via video conference. Immigration judges are explicitly authorized by statute and regulation to conduct hearings via video conference. 8 U.S.C. § 1229a(b)(2)(A)(iii), 8 C.F.R. § 1003.25(c). Hermez points to no precedent in which an IJ's decision to hear a case by means of video conference was held to deprive a petitioner of a fair hearing. In Hermez's case, the IJ stated that he could hear the attorneys, Hermez, and Hermez's one witness clearly. The IJ considered the record and all of the testimony in the case and made a decision based on that information. Hermez had a fair hearing.

Fourth, Hermez argues that his due process rights were violated when the IJ did not provide a Chaldean interpreter to interpret the testimony of his mother, who cannot speak English. Yet the

record shows that Hermez's counsel specifically declined to have his mother testify in person.

Instead, counsel stated:

> Well, as we discussed off the record, calling the mother to the stand is a traumatic experience for her. She, first of all, doesn't speak English. Second of all, any time I've asked her a question about her son, she just breaks down crying and is unable to really articulate anything with regard to her son. I would like to make an offer of proof, if accepted, that she would testify consistent with her two sons who have testified so far in this case.

JA 436-37. The offer of proof was accepted. There is no evidence that the lack of a Chaldean interpreter was ever mentioned, or that the lack was due to anything other than Hermez's stated decision not to call his mother as a witness.

Fifth, Hermez argues that the BIA's decision to affirm the IJ's decision without opinion violated his due process rights. The BIA did, however, issue an opinion in this case, pursuant to *Matter of Burbano*, 20 I&N Dec. 872, 874 (BIA 1994). The brief opinion simply adopted and affirmed the IJ's decision with respect to the IJ's hardship determination. We have explicitly upheld such decisions. *Gishta*, 404 F.3d at 980 (holding that a BIA decision that adopts and affirms pursuant to *Burbano* "demonstrates that the board independently reviewed the case.").

Finally, Hermez argues that his case should have been assigned to a three-member panel of the BIA for review, citing 8 C.F.R. § 1003.1(e)(6). That regulation states that at least one of several criteria must apply for the BIA to determine the case by a three-member panel. The regulation does not specify any circumstances in which a case *must* be submitted to a three-member panel. Hermez points to no authority creating such a mandate.

**V**

No. 05-4555
Hermez v. Gonzalez

For the reasons set out above, we DENY the petition for review.