**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0589n.06

No. 08-4006

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Aug 20, 2009**
LEONARD GREEN, Clerk

JOSE COJOM SANIC, )
)
    Petitioner, )
)
v. ) PETITION FOR REVIEW OF ORDER OF
) BOARD OF IMMIGRATION APPEALS
ERIC H. HOLDER, JR., )
Attorney General of the United States, )
)
    Respondent. )

BEFORE:    KEITH, COLE, and WHITE, Circuit Judges.

**KEITH, Circuit Judge**. Petitioner Jose Sanic ("Sanic") seeks this Court's review of an

order from the Board of Immigration Appeals ("BIA"), denying his application for asylum,

withholding of removal, protection under the Convention Against Torture, and cancellation of

removal. For the following reasons, we **DISMISS** the petition for review, in part, and **DENY** it, in

part, and **AFFIRM** the BIA's decision.

**I.**

**A. Procedural Summary**

On December 20, 1992, Petitioner Jose Sanic ("Sanic") applied for asylum, pursuant to 8

U.S.C. § 1158(b)(1), and withholding of removal, pursuant to 8 U.S.C. § 1231(b)(3). He also

applied for Suspension of Deportation or Special Rule Cancellation of Removal under section 203

of the Nicaraguan and Central American Relief Act ("NACARA") of 1997 ("Special Rule

Case No. 08-4006
*Sanic v. Holder*

Cancellation").[1]  Sanic was denied Special Rule Cancellation, and the matter was referred to an immigration judge  ("IJ") in accordance with 8 C.F.R. § 240.70.

On August 7, 2006, the Department of Homeland Security served Sanic with a Notice to Appear ("Notice"), charging him with removability under 8 U.S.C. § 1182(a)(6)(A)(i).  On October 3, 2006, Sanic appeared before the IJ and admitted the factual allegations in the Notice and conceded his removability.  That same date, Sanic indicated that he wished to renew his request for asylum and that he would seek cancellation of removal under 8 U.S.C. § 1229b(b)(1).  On February 28, 2007, Sanic filed his application for cancellation of removal with the immigration court.

Sanic's merits hearing was held on September 25, 2007 in Memphis, Tennessee.  He was the only testifying witness, and spoke before the IJ with the help of a Spanish interpreter.  He also submitted a list of exhibits, including a declaration from Frank O. Mora, Ph.D., an academic with expertise in Latin American politics and society.

An oral decision was rendered the day of the hearing.  The IJ denied Sanic's applications for asylum, withholding of removal, cancellation of removal, and voluntary departure on the merits while finding that Sanic was not eligible to apply for CAT relief because of the age of his asylum application.  Sanic appealed the IJ's decision and the BIA dismissed the appeal in an order and opinion dated July 22, 2008.  The instant petition for review timely followed on August 14, 2008.

**B.  Removal Proceeding**

---

[1]*See* Pub. L. No. 105-100, 111 Stat. 2160 (Nov. 19, 1997).

Sanic is a native and citizen of Guatemala and of Quiche descent.[2]  He resided with his family in Almolonga, Quezaltenango, Guatemala.  Sanic came to the United States in June 1990 as a thirteen-year-old during the civil war between the Guatemalan government and a national guerrilla movement.

According to Sanic's testimony, found credible by the IJ,  several guerrilla members broke into Sanic's family's home in Guatemala one night during late May of 1990.  The guerrillas informed Sanic's father that they wanted to take Sanic and his two brothers to join their rebel forces.  Sanic's father refused to let his children go, telling the guerrillas that he did not believe in their cause and that he sided with the government in the civil war.  In response, the guerrillas beat Sanic's father with their hands and various unidentified weapons that they carried.  Sanic stated he was also "beaten some" during the encounter but that his mother "received most of the beats up (sic)" while she protected him.  Sanic further stated the beating his mother received was "not much."  *Id.*  The guerrillas were in the home for a total of eight to ten minutes before fleeing.

Shortly after this incident, Sanic's father decided to send Sanic and his brothers to the United States out of concern for their safety.  Sanic entered the United States illegally on June 20, 1990.  His father, as well as his sister, continued to live in Guatemala as of the date of Sanic's immigration hearing.

The 2005 United States Department of State Country Report on Human Rights Practices in Guatemala ("State Department Report"), included as part of the administrative record, indicated the civil war between the government and the guerrillas ended in 1996 when a formal peace accord was

---

[2]The Quiche are indigenous to Guatemala and have Mayan ancestry.

signed. Sanic, however, alleged the fighting continues based on reports from his father. Accordingly, Sanic feared returning to Guatemala out of concern that the guerrillas would seek to harm or kill him in retribution for his prior refusal to join their cause.

Sanic claimed that former guerrillas visited his father in 1998, and warned him that Sanic and his brothers would be killed if they returned to Guatemala. Sanic testified that guerrillas still operate across all of Guatemala and thus he could not safely relocate to another part of the country if he were removed from the United States. Sanic did not claim that his family members living in Guatemala have been harmed by guerrillas since the May 1990 incident. Sanic's father told him, however, that one individual who returned to Guatemala in 2006 was kidnaped and never reappeared. The circumstances surrounding the alleged kidnaping are not contained in the record.

The declaration from Dr. Mora alleged that "irregular forces, such as former Guatemalan guerrillas engaged in political and criminal activities exercise near absolute control in the more remote areas of the country." He further suggested that Sanic's social status and former residency in the remote area of Quetzaltenango would likely lead to "continued harassment, intimidation, and violence that he experienced before leaving the country." According to Dr. Mora, "[i]n small rural communities where . . . the effectiveness of law enforcement agencies is dismal, the repression or murder of past victims of human right violations" may occur.

The State Department Report acknowledged the existence of widespread "societal violence" in Guatemala and specifically attributed hundreds of killings and other crimes to "non-state actors with links to organized crime, gangs, private security companies, and alleged 'clandestine groups.'" The State Department Report, however, did not indicate that these acts of violence were committed

for political reasons. Furthermore, the document noted the absence of reports of politically motivated disappearances in Guatemala as well as politically motivated killings by the government and its agents.

Sanic has remained in the United States and has not returned to Guatemala since he left in 1990. He is married and has two daughters, who are both United States citizens. The family resides in Cookeville, Tennessee where Sanic works as a machine operator in a sofa assembly facility. His wife is a Mexican national without legal status in the United States. The elder daughter, Jazlinn Cojom ("Jazlinn"), was born in the United States on June 10, 2002. The younger daughter, Nicole Cojom ("Nicole"), was also born in the United States on February 2, 2006. *Id.* Sanic indicated that if he were returned to Guatemala, he would not take his children with him for safety reasons due to the alleged threat from guerrillas. He also complained of limited economic opportunity for himself and educational opportunities for his children.

### C. The IJ's Decision

The IJ found Sanic to be a credible witness but determined that he failed to present sufficient objective evidence to establish past persecution or a "well-founded fear" of future persecution. Specifically, the IJ found that the single incident in 1990 "when guerrillas came to [Sanic's] house one night for 8 to 10 minutes, and beat his father and pushed around his mother while respondent was being protected by his mother from injury" did not constitute "persecution" under 8 U.S.C. § 1101(a)(42)(A). The IJ also held that Sanic did not demonstrate a "well-founded fear of persecution" given that the civil war in Guatemala had ended and the guerrillas were "no longer in the business of recruiting people to join their ranks." In addition, the IJ determined that Sanic's

claim to be a member of a social group consisting of returning Guatemalans did not warrant asylum relief because the violence in Guatemala appeared to be pervasive and not directed at any particular socioeconomic group. The IJ further found that Sanic had not shown that his Quiche ethnic identity would subject him to persecution. Finally, the IJ determined that Sanic had not demonstrated a country-wide threat of persecution. For these reasons, Sanic's asylum application was denied, as was his application for withholding of removal under the more stringent "clear probability of persecution" standard.

The IJ also denied Sanic's application for cancellation of removal because he found that Sanic failed to establish that his removal would result in "exceptional and extremely unusual hardship" to his daughters. In reaching this conclusion, the IJ noted that both his children were healthy and did not have special needs in school. The IJ emphasized that the children were of "tender years" and that Spanish was the language spoken at home. The IJ further found that although Sanic's daughters would likely receive "diminished educational opportunities" in Guatemala, they still would not suffer "exceptional and extremely unusual hardship" under BIA precedent because they would not be completely deprived of an education.

The IJ ruled that Sanic was not eligible for CAT relief because of the age of his asylum application. Finally, the IJ denied Sanic's application for voluntary departure because of his inability to pay for his way out of the United States.

### D. The BIA's Decision

At the outset of its July 22, 2008 opinion and order, the BIA dismissed Sanic's appeal with respect to his claims for withholding of removal, voluntary departure, and CAT relief because Sanic

did not challenge the IJ's determination in his administrative brief.[3]  With respect to Sanic's asylum claim, the BIA found that Sanic had "failed to meet his burden of proof for asylum."  Specifically, it concurred in the IJ's decision that the "credible, [] single incident in 1990, with respect to [Sanic] directly, did not rise to the level of [past] persecution."  The BIA determined that Sanic lacked a "well-founded fear" of future persecution given that he had not shown that the threat of persecution existed country-wide.  In reaching its conclusion, the BIA noted that Sanic's father had remained in Guatemala unharmed since the 1990 incident.  The BIA also rejected Sanic's claim that his ethnic identity and/or status as a returnee to Guatemala from the United States established an objectively well-founded fear of persecution.

The BIA adopted and affirmed the IJ's decision to deny Sanic cancellation of removal based on a failure to establish "exceptional and extremely unusual hardship" with respect to his daughters.  The BIA specifically stated that Sanic did not qualify for such relief because the "hardship [Sanic's] daughters will face . . . is the same or similar to that of other similarly situated children facing the removal of a parent."

## II.

"When the BIA adopts the IJ's reasoning and supplements the IJ's opinion, that opinion, as supplemented by the BIA, becomes the basis for review."  *Zhao v. Holder*, 569 F.3d 238, 246 (6th Cir. 2009).  While the Court reviews legal conclusions *de novo*, factual determinations are reviewed under a substantial evidence standard.  *Id.*  We must uphold the BIA's factual determinations as to

---

[3]Even though the BIA disagreed with the IJ's finding that Sanic could not apply for CAT relief, the BIA did not disturb the ruling because Sanic failed to challenge the IJ's denial of CAT relief in his administrative brief.

whether Sanic sustained his burden of proof regarding eligibility for asylum and withholding of removable if "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Id.* (internal quotation marks and citations omitted). "Under this deferential standard, we may not reverse the Boards's or the immigration judge's determination simply because we would have decided the matter differently." *Kaba v. Mukasey*, 546 F.3d 741, 747 (6th Cir. 2008) (internal quotation marks and citations omitted). "Rather, to overturn such a factual determination, 'we must find that the evidence not only *supports* [a contrary] conclusion, but *compels* it.'" *Id.* (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992)).

## III.

To establish eligibility for asylum, Sanic must demonstrate that he qualifies as a refugee. 8 C.F.R. § 1208.13(b); 8 U.S.C. § 1158(b)(1)(A). A "refugee" is defined as an alien "who is unable or unwilling to return to [his or her country of nationality], and is unable or unwilling to avail himself or herself of the protection of, that country because of [past] persecution or a well-founded fear of [future] persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). Once an alien demonstrates that he or she is a refugee, the Attorney General has the discretion to decide whether to grant the applicant asylum. 8 U.S.C. § 1158(b)(1)(A).

### A. Past Persecution

To demonstrate past persecution, "the conduct on which the application for asylum is based must go beyond what might reasonably be characterized as mere harassment." *Gilaj v. Gonzales*, 408 F.3d 275, 285 (6th Cir. 2005) (per curiam). Our Court has emphasized that persecution "does

not encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional." *Lumaj v. Gonzalez*, 462 F.3d 574, 577 (6th Cir. 2006) (quoting *Fatin v. INS*, 12 F.3d 1233, 1240 (3d Cir. 1993)). Moreover, "'[p]ersecution' within the meaning of 8 U.S.C. § 1101(a)(42)(A) requires more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty." *Mikhailevitch v. INS*, 146 F.3d 384, 390 (6th Cir. 1998); *see also Ndrecaj v. Mukasey*, 522 F.3d 667, 674 (6th Cir. 2008). Yet the presence of physical violence is not necessarily sufficient to compel a finding of persecution. *See Gilaj*, 408 F.3d at 284 (citing with approval *Gjokic v. Ashcroft*, 104 F. App'x 501, 505 (6th Cir. 2004)).

Sanic argues that the threats of violence and physical beating he and his family received at the hands of the guerrillas during the single encounter in May 1990 "clearly establish[ed]" that he "was the victim of past persecution." This Court has recognized that a single incident may establish persecution provided it is "correspondingly severe." *See Mohammed v. Keisler*, 507 F.3d 369, 371 (6th Cir. 2007). But, we have also held that a single beating does not necessarily *compel* a finding of persecution even if it could *support* such a determination. *See Lumaj*, 462 F.3d at 577; *Gjokic*, 104 F. App'x at 505.

In *Lumaj*, the Court confronted allegations by a female asylum applicant that she was attacked by two men claiming to be police officers, beaten, and then forced into a car. 462 F.3d at 577. The Court rejected the petitioner's claim of past persecution based on "this one, isolated incident, of limited severity" notwithstanding her suffering of "some bodily injuries" as she "was not detained, imprisoned, tortured, or sexually assaulted in any way." *Id*. In *Gjokic*, the petitioner

alleged that after attending a demonstration, protesting the mistreatment of ethnic Albanians, Serbian police beat him with rubber sticks and he suffered bruising as a result. 104 F. App'x at 502. *Gjokic* held that "while even a single beating offends one's sense of civilized governmental conduct, a single beating does not *compel* a finding of persecution." *Id.* at 505.

Sanic's claim of past persecution is weaker than those rejected by this Court in *Lumaj* and *Gjokic*. First, it was Sanic's father, rather than Sanic, who was the primary target of the guerrillas' beatings. While Sanic testified to being "beaten some" during the encounter, he indicated that his mother protected him and that she "received most of the beats up (sic)." He further acknowledged that even the beating she received was "not much." To the extent we were not compelled in *Lumaj* and *Gjokic* to find past persecution based on the assault of the asylum applicants in those cases, there is even less support for doing so when the individual did not bear the brunt of the attack.

Second, the extent of harm suffered by Sanic undercuts his claim of persecution*. Lumaj* rejected a persecution claim despite allegations by the petitioner of "bodily injuries," 462 F.3d at 577, while *Gjokic* denied a persecution finding even though its petitioner suffered from "bruising." 104 F. App'x at 502. Unlike *Lumaj* and *Gjokic*, Sanic does not offer any evidence that he suffered injuries.

We also find the short duration of the incident to be significant. Sanic testified that the guerrillas were in his house for only eight to ten minutes. The brevity of the encounter, although undoubtedly traumatic, does not compel a finding of past persecution. *See Gjokic*, 104 F. App'x at 505 (citing with approval *Prasad v. INS*, 47 F.3d 336, 339-40 (9th Cir. 1995) (holding that "[a]lthough a reasonable fact-finder could have found" a brief detention and beating requiring no

medical care "sufficient to establish past persecution . . . a fact-finder would [not] be compelled to do so.")).

At bottom, while the harsh treatment endured by Sanic may have supported a finding of past persecution, we find that it does not compel such a determination. *See Lumaj*, 462 F.3d at 577. Thus, we decline to disturb the BIA's ruling that Sanic did not suffer past persecution.

### B. Well-Founded Fear of Future Persecution

In order to demonstrate eligibility for asylum on the basis of a well-founded fear of future persecution under 8 C.F.R. § 208.13(b)(2), an applicant must establish that:

> (1) he or she has a fear of persecution in his or her country on account of race, religion, nationality, membership in a particular social group, or political opinion; (2) there is a reasonable possibility of suffering such persecution if he or she were to return to that country; and (3) he or she is unable or unwilling to return to that country because of such fear.

*Mikhailevitch*, 146 F.3d at 389. "An applicant's fear of persecution must be both subjectively genuine and objectively reasonable." *Id.* Because Sanic has failed to demonstrate past persecution, he is not entitled to the presumption of a well-founded fear of future persecution. *Gilaj*, 408 F.3d at 285.

The IJ ruled that Sanic's fear of persecution was not well-founded, in part, because the civil war in Guatemala had ended. The State Department Report supports the IJ's finding as it states the civil war between the government and the guerrillas ceased in 1996 when a formal peace agreement was reached by the two sides. Based on this evidence, the IJ concluded there was no reasonable possibility that Sanic will suffer persecution "because the civil war is over, and the guerrillas are no longer in the business of recruiting people to join their ranks."

Despite formal cessation of the civil war, Sanic alleges that the fighting continues based on reports from his father. But, Sanic's speculations are not sufficient to compel a finding that the Guatemalan government and guerrillas continue to fight or that guerrilla forces remain active. Several sister circuits have held that the formal end to the Guatemalan civil war undermined or eliminated the threat of future persecution by guerrilla forces. *See, e.g., De Leon v. Gonzales*, 153 F. App'x 3, 6 n.4 (1st Cir. 2005) (asylum applicant lacked well-founded fear of persecution on return to Guatemala because peace accords had been signed and the civil war was over); *Ordonez Tumax v. Ashcroft*, 79 F. App'x 642, 644 (5th Cir. 2003) (finding substantial evidence supported the IJ's finding that Guatemalan peace accord eliminated the possibility that petitioner would not be pressured to join guerrillas); *Ramos-Ortiz v. Ashcroft*, 70 F. App'x 68, 72 (3d Cir. 2003) (relying on the signing of peace accords in Guatemala to agree with IJ that petitioner did not face a well-founded fear of future persecution). In light of the end of the civil war and absence of evidence to suggest that guerrillas remain active, this Court is not compelled by the record to find that Sanic's fear of reprisal or recruitment by guerrillas forces is well-founded.

Nevertheless, Sanic maintains that even if the fighting has ceased in Guatemala, former guerrillas will target him when he returns because he did not join them during the civil war. Relevantly, Sanic testified that his father was contacted by former guerrillas in 1998, two years after the formal end of the conflict. The guerrillas allegedly threatened that Sanic would be killed if he returned home. Sanic also claimed that his father knew of an individual who returned to Guatemala in 2006 and was subsequently abducted. The BIA implicitly rejected the significance of this evidence and found Sanic's "status as a returnee to Guatemala from the United States does not,

without more, establish an objectively well-founded fear of being subject to persecution."

As noted by the BIA, Sanic's father has remained unharmed in Guatemala since 1990. This fact suggests that the threat of harm from former guerrilla members has subsided, particularly since Sanic's father was the principal objector to the guerrillas' recruitment of his sons. *See Zacarias v. Gonzalez*, 232 F. App'x 458, 463 (6th Cir. 2007) (finding the threat of harm against petitioner by guerrillas was undermined because petitioner's close relatives lived in Guatemala for many years without incident); *Matter of A-E-M-*, 21 I. & N. Dec. 1157, 1160 (BIA 1998) (noting that an applicant's fear of persecution is undercut when his family remains in the native country unharmed). Furthermore, while Sanic was threatened by former guerrillas in 1998, that incident occurred eight to nine years before Sanic's immigration hearing in 2007. The significant passage of time serves as further evidence that Sanic would not be persecuted if he returned to Guatemala. *See Emelkin v. Ashcroft*, 97 F. App'x 27, 29 (6th Cir. 2004) (finding a lapse of over ten years since petitioner's parents and brother were harmed undercut reasonableness of petitioner's fear of persecution due to his ethnicity upon return to Moldova).

Nor are we persuaded by the alleged abduction of Sanic's family acquaintance who returned to Guatemala following the end of the war. As the IJ observed, "[w]e do not know why that man was taken into custody, and we do not know who took him into custody, and we do not know the circumstances under which he was taken into custody." Given these unknowns, the evidence does not compel us to find that Sanic has a well-founded fear of persecution resulting from his status as

a Guatemalan who resisted guerrillas for political reasons and returned home after the civil war.[4]

## C. Conclusion

Because the record does not compel a finding that Sanic suffered past persecution or that he possesses a well-founded fear of future persecution, the Court denies Sanic's asylum claim.

## IV.

Sanic also challenges the BIA's denial of his application for cancellation of removal. An individual qualifies for cancellation of removal if he: (1) has remained physically in the United States for a continuous of period of not less than ten years; (2) has been of good moral character during that period; (3) has not been convicted of certain criminal offenses; and (4) establishes that removal would result in "exceptional and extremely unusual" hardship to his spouse, parent, or child who is a citizen or lawful permanent resident of the United States. 8 U.S.C. § 1229b(b)(1); *Santana-Albarran v. Ashcroft*, 393 F.3d 699, 702 (6th Cir. 2005). The government retains discretion to deny relief even if the applicant satisfies all four elements. *See id.*

In this case, the BIA, adopting and affirming the IJ's opinion, concluded Sanic did not meet his burden of proof because his young daughters, both United States citizens, would not suffer "exceptionally and extremely unusual" hardship as a result of Sanic's removal to Guatemala. Sanic

---

[4]The BIA, as well as the IJ, also concluded that Sanic did not establish a "well-founded fear" because he failed to demonstrate that he possessed a fear of country-wide persecution. *See Berri v. Gonzalez*, 468 F.3d 390, 397 (6th Cir. 2006) (requiring petitioner to prove he had a "well-founded fear of persecution throughout the entire country," not just in city of former residence). Given the substantial evidence that Sanic does not have a well-founded fear of persecution even in his former area of residence, the Court need not review the BIA's determination regarding the absence of a country-wide threat of persecution. Nor must we assess the reasonableness of expecting Sanic to relocate to another part of the country.

disputes the validity of this finding on appeal, arguing that his children will suffer extreme hardship due to diminished educational opportunities in Guatemala and his supposed inability to financially support them if removed to his native country.

Regardless of the merits of Sanic's claims, judicial review of this issue is foreclosed by 8 U.S.C. § 1252(a)(2)(B)(i), which specifically divests courts of jurisdiction to review administrative judgments pertaining to cancellation of removal claims. This provision, in addition to the broader mandate of 8 U.S.C. § 1252(a)(2)(B)(ii), bars our consideration of any discretionary decision made in immigration cases, other than those relating to applications for asylum.[5] *See Santana-Albarran*, 393 F.3d at 703 (stating § 1252(a)(2)(B) "specifically divests jurisdiction of a court to review judgments regarding the granting of discretionary relief, including the cancellation of removal"); *Valenzuela-Alcantar v. INS*, 309 F.3d 946, 949-50 (6th Cir. 2002) (holding administrative determination regarding hardship under prior, less stringent, "suspension of deportation" standard is considered a discretionary issue and not subject to judicial review). Accordingly, we cannot review the IJ's finding that Sanic did not demonstrate the requisite extreme hardship on behalf of his children to be eligible for cancellation of removal. Notably, Sanic does not address the issue of jurisdiction in his brief.

While two recognized exceptions to the jurisdictional bar created by § 1252(a)(2)(B) exist,

---

[5] 8 U.S.C. § 1252(a)(2)(B) states in relevant part, "no court shall have jurisdiction to review-- (i) any judgment regarding the granting of relief under section . . . 1229b [pertaining to cancellation of removal] of this title, or (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) [pertaining to asylum] of this title."

neither applies in this case. First, Sanic does not raise a colorable constitutional claim or question of law with respect to cancellation of removal that would justify our review of the IJ's ruling on this issue. 8 U.S.C. § 1252(a)(2)(D). Second, Sanic does not allege the IJ ignored or failed to follow precedent in making his hardship determination. *Aburto-Rocha v. Mukasey*, 535 F.3d 500, 503 (6th Cir. 2008) (holding a claim that the BIA ignored its own precedent when deciding hardship prong of cancellation of removal test was subject to judicial review). He instead argues that the record demonstrates that his children will have "little or no education opportunities in Guatemala" and that he will be unable to support them financially if removed to his native country. These claims essentially challenge the IJ's assessment of the evidence in finding a lack of "exceptionally and extremely unusual" hardship. Such a determination is a discretionary matter not subject to judicial review. *See Valenzuela-Alcantar*, 309 F.3d at 949-50. To the extent Sanic mentions BIA precedent, he does so only to characterize the precedent as inapplicable rather than claiming it demands a different result. *See* Sanic Br. 27 (stating his situation "is distinguishable from [*Matter of Monreal-Aguinaga*, 23 I. & N. Dec. 56 (BIA 2001)] and [*Matter of Andazola-Rivas*, 23 I. & N. Dec. 319 (BIA 2002)].").

Given the inapplicability of the exceptions to § 1252(a)(2)(B), we are without jurisdiction to review Sanic's application for cancellation of removal, and accordingly, dismiss his petition for review.

## V.

Finally, Sanic indicated in his petition that he was also challenging the BIA's decisions to deny withholding of removal and CAT relief. He does not, however, include any meaningful

argument related to these issues in the brief submitted to this Court. He instead offers only perfunctory references to them in his summary and concluding statement. By failing to develop his arguments, Sanic waived withholding of removal and CAT relief as grounds for relief from the IJ's removal order. *See Shkabari v. Gonzalez*, 427 F.3d 324, 327 n.1 (6th Cir. 2005) (ruling applicants waived withholding of removal and CAT relief claims by mentioning them only in the statement of issues section of their brief). Therefore, we dismiss Sanic's petition for these claims.

## VI.

For the reasons stated above, we **DISMISS** the petition for review, in part, and **DENY** it, in part, and **AFFIRM** the BIA's decision.