

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-9-2003

# Ramos-Ortiz v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-3277

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Ramos-Ortiz v. Atty Gen USA" (2003). *2003 Decisions.* Paper 379.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/379

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 02-3277
_____

JORGE RAMOS-ORTIZ,

Petitioner

v.

JOHN ASHCROFT, ATTORNEY GENERAL
OF THE UNITED STATES

Respondent
_____

On Petition for Review of an Order of the Board of Immigration Appeals
Agency No. A70 679 493

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
June 2, 2003

Before: BARRY, FUENTES and ROSENN, Circuit Judges

(Opinion Filed: July 9, 2003)

_____

OPINION

_____

FUENTES, <u>Circuit Judge</u>:

Petitioner Jorge Ramos-Ortiz ("Ramos") appeals the Board of Immigration Appeals' ("BIA") decision to summarily affirm the denial of his application for asylum and withholding of removal. The Immigration Judge ("IJ") concluded that Ramos was not a victim of past persecution and was not likely to be the subject of future persecution if he returned to Guatemala. Because we find that the IJ's decision is supported by substantial evidence, we deny the petition for review.

## I. Background

Because we write solely for the parties, our review of the factual background is limited to that which is necessary to inform our opinion today. Ramos is an indigenous native of Guatemala from the Huehuetenango region. He is currently 31 years old, unmarried, and has no children. While in Guatemala, Ramos lived with his parents. His older brother had been recruited into the military and was killed in battle against the guerillas. In 1989, guerillas began coming to his parents' home and taking provisions. In early 1990, the guerillas entered the home at approximately 3 A.M. and demanded that Ramos join them. Ramos's father explained that he was ill and needed Ramos at home. The guerillas agreed that Ramos could stay until his father recovered, but said that if Ramos did not join the guerillas upon their return, they would kill him. Ramos decided to leave Guatemala rather than join the guerillas. On his way to the Mexican border, Ramos was stopped by some guerillas and detained for two days, without explanation. He escaped from this detention and unlawfully entered the United States on or about May 10, 1990.

2

In 1993, Ramos filed for asylum under 8 U.S.C. § 1158 and in 1998, the Immigration and Naturalization Service ("INS") issued a Notice to Appear, which charged that Ramos was removable under 8 U.S.C. § 1182(a)(6)(A)(i) because of his illegal entry into the United States. Ramos conceded that he was removable, but renewed his asylum application and filed for withholding of removal under 8 U.S.C. § 1231(b)(3) and, alternatively, for voluntary departure under 8 U.S.C. § 1229c(b)(1). The IJ denied his application. Petitioner filed a timely appeal with the BIA. The BIA affirmed without opinion and issued a final order of removal.

Meanwhile, in March of 1996, the guerillas in Guatemala unilaterally ceased their military operations. The government immediately ceased military operations as well, and the two sides entered into peace negotiations which culminated in the signing of peace accords on December 29, 1996. In March of 1997, the umbrella guerilla organization voluntarily dissolved itself in order to devote its efforts to legitimate political activity. According to the State Department's 1998 human rights report, current conditions in Guatemala remain difficult: there is a great deal of criminal activity, but the government appears to be attempting to curb the violence and human rights violations.

## II. Jurisdiction and Standard of Review

We have jurisdiction under 8 U.S.C. § 1252(b)(2). The IJ's opinion is the final agency determination under 8 C.F.R. § 3.1(a)(7)(iii) (2002), because the BIA affirmed the IJ without opinion. *See Abdulai v. Ashcroft*, 239 F.3d 542, 549 (3d Cir. 2001). The IJ's determination on an asylum applicant's past persecution or well-founded fear of future persecution is a

3

factual question that we review under a substantial evidence standard. *See Gao v. Ashcroft*, 299 F.3d 266, 272 (3d Cir. 2002). In *Senathirajah v. INS*, the court noted that "[s]ubstantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." 157 F.3d 210, 216 (3d Cir. 1998) (quoting *Turcios v. INS*, 821 F.2d 1396, 1398 (9th Cir. 1987)). Thus, we should affirm the IJ's decision if the record contains adequate evidence to support his decision. *See id*.

### III. Discussion

Ramos has applied for both asylum under § 208 and withholding of removal under § 241(b)(3). Under 8 C.F.R. § 208.13(a), an asylum seeker must establish that he is entitled to refugee status. A refugee is defined as a person who is unable to return to his or her country because of past persecution or a well-founded fear of persecution due to his or her race, religion, nationality, membership in a particular social group, or political opinion. 8 § 1101(a)(42)(A). In *INS v. Cardoza-Fonseca*, the Supreme Court held that the well-founded fear element of the definition of a refugee requires that the asylum seeker demonstrate that there is a "reasonable possibility" that he will be exposed to persecution upon his return. 480 U.S. 421, 440 (1987) (adopting language of *INS v. Stevic*, 467 U.S. 407, 424-25 (1984), which pointed out that "it is enough that persecution is a reasonable possibility"). As the IJ also noted, an applicant for withholding of removal under § 241(b)(3) must demonstrate a "clear probability" of persecution based on one of the five protected grounds. *See Stevic*, 467 U.S. at 430. Withholding of removal is a higher standard for a refugee to meet. *See Senathirajah,* 157 F.3d at 215 (an alien must show that it is more likely than not that he will

4

be subjected to persecution upon his return to qualify for withholding of removal, but even if he fails to meet this standard, he may qualify for a grant of asylum at the Attorney-General's discretion if he shows that he has a well-founded fear of persecution which requires only that he show that persecution is a reasonable possibility on his return). The persecution must be committed by either the government or forces the government is unable or unwilling to control. *See Gao*, 299 F.3d at 272. A well-founded fear of persecution has both a subjective and an objective element: the alien must have a genuine fear or returning to his home country, and that fear must be objectively reasonable, that is, a reasonable person in his circumstances would fear persecution upon his return. *See Cardoza-Fonseca*, 480 U.S. at 430-31.

Ramos has not established that he experienced past harm rising to the level of persecution for the purposes of the statute. In *Fatin v. INS*, this court held that persecution must be defined narrowly. 12 F.3d 1233, 1240 (3d Cir. 1993). In particular, persecution is only extreme conduct. *See id.* All treatment that is unjust, unfair, or unlawful does not rise to the level of persecution. *See id.* Threats alone are generally not sufficient to constitute past persecution; instead, only those threats that are so menacing in themselves that they cause significant actual suffering or harm rise to the level of persecution. *See Lim v. INS,* 224 F.3d 929, 936 (9th Cir. 2000); *Boykov v. INS,* 109 F.3d 413, 416-17 (7th Cir. 1997).

Ramos was subjected to visits by the guerillas in which they demanded food and supplies, was threatened if he did not agree to join the guerillas, and was detained by guerillas for two days on his way out of the country. Ramos points to *Chang v. INS,* 119

5

F.3d 1055 (3d Cir. 1997) and *Matter of Itazula,* 20 I & N Dec. 149 (BIA 1990), to argue that harsh prison conditions or the threat of harsh prison conditions may be enough to show harm rising to the level of past persecution. In *Chang*, the court addressed whether an alien's fear of a year or more of prison as a result of the alien's choice to break his country's law could qualify as fear of persecution. 119 F.3d at 1066-67. In *Matter of Itazula*, the alien also feared being placed in prison upon his return, and the BIA held that the harsh prison conditions he faced, including regular physical and psychological torture, rose to the level of persecution. 20 I. & N. Dec. at 153.

The instant case is distinguishable because Ramos is not facing any prison time upon his return to Guatemala, and, therefore, he has no reason to fear harsh conditions in the Guatemalan prison system. Moreover, the two days of imprisonment he suffered at the hands of the now disbanded guerilla forces did not include the physical or psychological torture outlined in *Itazula*. *See also Skalak v. INS*, 944 F.2d 364, 365 (7th Cir. 1991) ("brief detentions and mild harassment" by themselves are not persecution); *Al-Saher v. INS*, 268 F.3d 1143, 1146 (9th Cir. 2001) (five or six day long detention without beatings, torture or threat was not persecution). Thus, there was reasonable and sufficient evidence to support the IJ's conclusion that Ramos did not face persecution by means of harsh prison conditions if he was returned to Guatemala.

In addition, the cumulative harm Ramos was subjected to was not sufficient to constitute past persecution under *Matter of O-Z- & I-Z-,* 22 I. & N. Dec. 23 (BIA 1998). In *O-Z- & I-Z-*, the BIA held that the aggregation of the various incidents suffered by the

6

petitioner, including multiple beatings, multiple written threats, vandalizing, and degradation and intimidation of his son were, taken together, persecution. Although the treatment Ramos received at the hands of the guerillas was unfortunate, there is sufficient evidence to support the IJ's conclusion that, even in the aggregate, the guerillas' treatment of Ramos did not rise to the level of persecution.

Even if the past harm had been sufficient enough to constitute past persecution, it was not based on a protected ground for asylum purposes. Ramos argues that the guerillas targeted him because of his political opinions. Although he is correct that imputed political opinions can be sufficient to establish persecution based on political opinion, he has not established that the guerillas targeted him due to political opinions which he explicitly stated or which were imputed to him. *See Balasubramanrim v. INS*, 143 F.3d 157, 165 n. 10 (3d Cir. 1998). Rather, the evidence supports the IJ's conclusion that he was targeted because he was an able bodied male the guerillas were able to reach.

As explained in *INS v. Elias-Zacharias*, guerillas' attempts at forcible recruitment do not rise to the level of past persecution unless the recruitment is specifically meant to be persecution for political opinions. 502 U.S. 478, 483 (1992). Ramos has not offered any evidence that the guerillas near his town knew of his political opinions; in addition, he did not have any conversation about politics with the guerillas who detained him. Thus, Ramos did not establish that any of the guerillas knew of his political opinions or targeted him as a result of those opinions.

7

In addition, Ramos does not appear to have been targeted either as a result of his ethnicity or as a result of his membership in a particular social group. The guerillas appear to have attempted to recruit Ramos because he was an able bodied man within their reach rather than because of his ethnicity or social group membership. In *Pedro-Mateo v. INS*, the court examined precisely this issue in Guatemala, and held that the indigenous majority in the guerillas' area was not a social group for asylum purposes. 224 F.3d 1147, 1150 (9th Cir. 2000). Similarly, in *Sanchez-Trujillo v. INS,* the court held that "[m]ajor segments of the population of an embattled nation at risk" due to the general violence are not a distinct "social group" for asylum purposes. 801 F.2d 1571, 1577 (9th Cir. 1986). Finally, the court in *Vides-Vides v. INS* held that the dangers faced by members of a particular social group must be appreciably different than those faced by the population as a whole. 783 F.2d 1463, 1469 (9th Cir. 1986). As the case law points out, the IJ correctly concluded that Ramos' ethnicity and social group were not the reason for the treatment he received from the guerillas.

Ramos also argues that mixed motives can be sufficient to establish past persecution based on a protected ground even if the protected ground is only part of the reason for the persecution. *See In re S- P-* 21 I. & N. Dec. 486, 492 (BIA 1996) (noting that asylum may be granted if the applicant provides evidence that the persecutors acted out of some improper motive, even if there were also legitimate motives for their actions). Because Ramos has not presented evidence sufficient to compel the finding that Ramos suffered persecution on any

8

protected basis, there is not sufficient evidence to overturn the IJ's rejection of a mixed motive theory.

In addition, because conditions in the country have changed drastically since he left in 1990, Ramos could not establish a well-founded fear of future persecution. *See Chang v. INS*, 119 F.3d at 1065 (noting that the petitioner "need only show that he has a subjective fear of persecution that is supported by objective evidence that persecution is a reasonable possibility"). According to the 1998 State Department's Country Report for Guatemala, in 1996 the umbrella guerilla group and the government signed peace accords which have been successfully implemented. Although the country remains poor and the government faces challenges in its attempts to control crime, these conditions do not rise to the level of an objectively supported well-founded fear of persecution. Thus, the IJ correctly concluded that Ramos did not face a well-founded fear of future persecution.

However, under 8 C.F.R. § 208.13(b)(1)(iii)(B), the IJ also has discretion to grant asylum to aliens who were the victims of past persecution but do not have a well-founded fear of future persecution if the aliens can establish that they have a reasonable fear of "other serious harm" that is serious enough to equal the severity of harm that would constitute persecution. *See Krastev v. INS*, 292 F.3d 1268, 1271 (10th Cir. 2002). However, because Ramos was not a victim of past persecution for asylum purposes, 8 C.F.R. § 208.13(b)(1)(iii)(B) is not applicable to his case.

## IV. Conclusion

We affirm the IJ's decision because Ramos has not presented evidence to support the conclusion that he was a victim of past persecution on account of protected grounds, nor has he shown that he is likely to be subject to future persecution if he returns to Guatemala, particularly given the dissolution of the guerilla forces in the years since he left the country.

_____
TO THE CLERK OF THE COURT:

Kindly file the foregoing Opinion.

/s/ Julio M. Fuentes
Circuit Judge

10