**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0666n.06

No. 09-3830

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**

**Oct 29, 2010**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| MANUEL RALIOS MORENTE; | ) | |
| MARIA M. MORENTE GUTIERREZ; | ) | |
| MARGARITA RALIOS MORENTE; | ) | |
| ANGEL RALIOS MORENTE; CELSO | ) | **ON PETITION** FOR |
| RALIOS MORENTE; ESPERANZA | ) | REVIEW OF AN ORDER OF |
| RALIOS MORENTE | ) | THE BOARD OF |
| | ) | IMMIGRATION APPEALS |
| Petitioners, | ) | |
| | ) | OPINION |
| v. | ) | |
| | ) | |
| ERIC H. HOLDER, JR., Attorney General, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |
| _____ | ) | |

Before:     **GILMAN and WHITE, Circuit Judges; and WATSON, District Judge.**[*]

**WATSON, District Judge.**  Petitioners seek review of the Board of Immigration Appeals'

("BIA") decision affirming the Immigration Judge's ("IJ") denial of their applications for asylum,

withholding of removal, and protection under the Convention Against Torture ("CAT").  During the

Guatemalan Civil War, the lead petitioner, Manuel Ralios Morente, supported the Guatemalan

government against the guerilla movement by serving in the local *Patrullas de Auto-Defensa Civil*

("PAC" or "Civil Patrol").  Ralios Morente asserts that as a result of his participation in the Civil

---

[*]The Honorable Michael H. Watson, United States District Judge for the Southern District
of Ohio, sitting by designation.

Patrol, he was subjected to past persecution and reasonably fears future persecution. The BIA found

otherwise.

This Court has jurisdiction to review the BIA's final order of removal under § 242 of the

Immigration and Nationality Act ("INA"), 8 U.S.C. § 1252. For the following reasons we find that

substantial evidence supports the BIA's decision, and we therefore **DENY** the petition for review.

## I. BACKGROUND

### A. Factual Background

Petitioners are Manuel Ralios Morente and his wife and four children. All are natives and

citizens of Guatemala. Ralios Morente and his family lived in Joyaboj, Quiche, Guatemala, where

Ralios Morente worked in agriculture, growing corn, beans, and sugar cane. The backdrop for this

case is the Guatemalan Civil War, which began in 1960 and ended with the signing of Peace Accords

between the Guatemalan government and the guerillas on December 29, 1996. A.R. 138; J.A. 102.

To protect his family from the guerillas, Ralios Morente voluntarily joined the local Civil

Patrol in 1981. A.R. 135, 201; J.A. 99, 165. He was a Chief in the Civil Patrol and served in that

position for almost twelve years before he left Guatemala in 1993. Ralios Morente worked under

the Civil Patrol's First Commandant, Nicolas Jose Chalas. A.R. 134; J.A. 98. When Chalas was

absent, Ralios Morente assumed command. *Id.* Ralios Morente commanded about eighty men.

A.R. 137; J.A. 101.

The Civil Patrol took orders from a Guatemalan Army lieutenant. A.R. 133; J.A. 97. Ralios

Morente averred that Civil Patrol members did not carry guns or wear uniforms and were not paid.

A.R. 132–34; J.A. 96–98. The Civil Patrol possessed the authority to arrest people. A.R. 134; J.A.

98. It arrested people who were suspected of aiding or spying for the guerillas. A.R. 134; J.A. 98.

Suspicion arose when, for example, a person violated the 6:00 p.m. curfew. A.R. 161–63; J.A. 125–27.

Ralios Morente testified that he never harmed or killed anyone. A.R. 134, 150; J.A. 98, 114. He stated that he sometimes detained the people he arrested in jail for two or three days. A.R. 135, 150; J.A. 99, 114. At other times, arrestees were hung upside down with their hands tied behind their backs and hit with leather whips. A.R. 150–56; J.A. 114–20. This form of punishment was used to coerce confessions and to convince people to stop aiding the guerillas. A.R. 167; J.A. 131. Ralios Morente asserted that the people who were punished in this manner did not require medical treatment and were able to work the next day. A.R. 159; J.A. 123.

The Civil Patrol turned suspected guerilla members over to the Guatemalan Army. A.R. 134; J.A. 55. Two such persons disappeared after they were turned over to the Army. A.R. 136; J.A. 100. Others were tortured while in Army custody. *Id.*

Guerilla fighters kidnaped Ralios Morente in 1982.[1] A.R. 135; J.A. 99. In his application for asylum, he represented that guerilla members came to his house, ransacked it, and took him away. A.R. 267; J.A. 231. He provides no other information about the kidnaping.

Ralios Morente also testified that he received threats as a result of his participation in the Civil Patrol. A.R. 139–40; J.A. 103–04. He averred that a man named Thomas threatened him with

---

[1]The record is somewhat unclear as to exactly when Ralios Morente was kidnaped. Documents in the record indicate he was a member of the Civil Patrol in 1981. A.R. 201; J.A. 165. On the other hand, Ralios Morente states that the kidnaping motivated him to join the Civil Patrol. A.R. 135–36; J.A. 99–100.

a gun and told him that if he did not leave the Civil Patrol "they" would come for him. A.R. 140; J.A. 104. Ralios Morente testified that Thomas was still alive. A.R. 166; J.A. 130. He stated that guerillas came to him many times asking for corn or beans, and he received many threats from them because he never wanted to join them or give them anything. A.R. 141; J.A. 105. Ralios Morente also stated that in 1990, a Civil Patrol Chief from a town called Chevade was murdered. A.R. 137; J.A. 101.

Ralios Morente indicated that he left Guatemala after the Peace Accord was signed in 1993 because the Civil Patrol was disbanded and no longer patrolled at night.[2] A.R. 139; J.A. 103. He said he believed he would be dead by now if he had stayed. A.R. 141; J.A. 105.

After Ralios Morente left Guatemala, another Chief of Patrol, named Gaspar, was murdered. Also, Ralios Morente's family received anonymous threatening letters. A.R. 142; J.A. 106. The letters indicated that "they" were looking for Ralios Morente, and that he would be killed if he returned to Guatemala. *Id*. One of Ralios Morente's daughters, Nicolasa, committed suicide in 1995 after reading the letters because she feared the men who sent them would come to sexually abuse the family. A.R. 143; J.A. 107.

Ralios Morente testified that if he returns to Guatemala, former guerillas will come looking for him because he was a member of the Civil Patrol. A.R. 144; J.A. 108. He also indicated that he will be prosecuted by the Human Rights Commission because he was a Chief of the Civil Patrol.

---

[2]The Peace Accords ending the Guatemalan Civil War were signed in 1996. It is unclear whether Ralios Morente is referring to a different accord or is simply mistaken as to the date.

A.R. 145; J.A. 109. Ralios Morente stated that two Civil Patrol members from other cantons were in jail.[3] A.R. 145, 148; J.A. 109, 112.

## B. Procedural Background

Ralios Morente entered the United States on September 10, 1993 and filed his application for asylum on January 4, 1994. A.R. 266–70; J.A. 230–34. His wife and children entered the United States on May 15, 2002. A.R. 40; J.A. 28. He added his wife and children to his application on October 18, 2004. A.R. 178; J.A. 142. The Department of Homeland Security charged Petitioners with removability, which Petitioners admitted at a preliminary hearing on June 2, 2005. A.R. 81; J.A. 45. At the hearing, Petitioners requested asylum, withholding of removal, and protection under the CAT. *Id.*

The IJ conducted another hearing on June 23, 2007. A.R. 125–175; J.A. 89–139. Ralios Morente was the only witness to testify at the hearing. The IJ issued an oral decision at the conclusion of the hearing denying Petitioners' applications and granting them voluntary departure. A.R. 39–49; J.A. 27–37.

The IJ found Ralios Morente credible. A.R. 45; J.A. 33. He indicated there was sufficient evidence to find Ralios Morente to be a persecutor or torturer, but declined to make such a finding. *Id.* The IJ concluded that Ralios Morente's fear of the Human Rights Prosecutor was a fear of prosecution, not persecution. A.R. 46; J.A. 34. He noted that nothing in the Country Reports

---

[3]Ralios Morente initially testified the two men worked under him A.R. 145; J.A. 109, then later clarified they were from other cantons. A.R. 148; J.A. 112.

indicated that the Human Rights Commission was seeking to prosecute any but the most egregious violators. *Id.*

The IJ further found that Ralios Morente's fear of vengeance concerned retribution rather than persecution. *Id.* He also determined that Ralios Morente failed to establish that the Guatemalan government was unable or unwilling to protect him from improper revenge. A.R. 47; J.A. 35. Additionally, the IJ observed that former members of the Civil Patrol appeared to be well-organized and could presumably provide some protection for one another. *Id.*

Petitioners timely appealed to the BIA. The BIA dismissed Petitioners' appeal on June 8, 2009. A.R. 3–5; J.A. 7–9. The BIA found that Ralios Morente's testimony about past harm did not demonstrate past persecution. A.R. 4; J.A. 8. Moreover, the BIA held that prosecution for a crime does not equate to persecution, and that Ralios Morente failed to show that he would be maliciously as opposed to legitimately prosecuted because of his role in the Civil Patrol. *Id.* Further, the BIA found that Ralios Morente failed to demonstrate that people in Guatemala who would recognize him as a former Civil Patrol member would seek to harm him. *Id.* It found his claim in this regard to be "speculative." *Id.* Lastly, the BIA concluded that Ralios Morente had not shown that the government would be unwilling or unable to protect him. *Id.*

Petitioners timely filed their petition for review of the BIA's decision on July 7, 2009.

## II. ANALYSIS

Ralios Morente argues that the BIA erred when it found that his claims of kidnaping and repeated threats failed to establish past persecution. He also contends that the BIA's finding that he feared legitimate prosecution rather than persecution is erroneous. Moreover, Ralios Morente

maintains that the BIA incorrectly found that he failed to establish that former guerillas will seek to harm him and that he failed to show the Guatemalan government is unable or unwilling to protect him.

Respondent asserts that Ralios Morente failed to demonstrate that he and his family suffered direct harm as a result of the threats they received. Respondent maintains that even when viewed cumulatively, the threats do not meet the standard for demonstrating past persecution. Respondent also argues that the record evidence does not compel a finding that Ralios Morente has a well-founded fear of future persecution because Ralios Morente fears only personal retribution and legitimate prosecution, neither of which constitute persecution.

## A. Standard of Review

When the BIA issues its own separate opinion rather than summarily affirming the IJ's decision, we review the BIA's decision as the final agency determination. *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009). We review the BIA's legal conclusions *de novo* and its factual findings under the substantial evidence standard. *Zhao v. Holder*, 569 F.3d 238, 246 (6th Cir. 2009). The substantial evidence standard requires this Court to uphold the BIA's factual findings if the findings are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Id.* at 247 (quoting *Koulibaly v. Mukasey*, 541 F.3d 613, 619 (6th Cir. 2008)) (internal quotation marks omitted). We will not overturn the BIA's factual determinations merely because we would have decided the matter differently. *Kaba v. Mukasey*, 546 F.3d 741, 747 (6th Cir. 2008). Rather, to reverse a factual finding, the record evidence must not only support reversal, it must *compel* it. *Id.*

**B. Asylum**

To qualify for asylum, a petitioner must satisfy a two-part inquiry. *Ndrecaj v. Mukasey*, 522 F.3d 667, 674 (6th Cir. 2008). First, the petitioner must establish that he is a "refugee." *Id.* Second, the petitioner must demonstrate that his application merits a favorable exercise of discretion by the IJ. *Id.*

A refugee is an alien who is unable or unwilling to return to his home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A). A demonstration of past persecution gives rise to a rebuttable presumption of a well-founded fear of future persecution. 8 C.F.R. § 208.13(b)(1).

**1. Past persecution**

Ralios Morente argues that he demonstrated past persecution. He stresses that guerillas kidnaped him, a man named Thomas threatened him with a gun and told him to leave the Civil Patrol, and others threatened him as well. He also notes that his family received threatening letters after he left Guatemala, and that another Civil Patrol Chief, Gaspar, was killed. Ralios Morente contends these harms were the result of his actual and imputed pro-government opinion, and that viewed cumulatively the instances of harassment establish past persecution. He asserts he should therefore be afforded the presumption of a well-founded fear of persecution.

Respondent points out that Ralios Morente provided no details about the conditions of his kidnaping, and that the threats against Ralios Morente and his family were not accompanied by

physical harm or imminent danger of harm. Respondent asserts that the record evidence therefore does not compel a finding of past persecution.

Persecution is "'the infliction of harm or suffering by the government, or persons a government is unwilling or unable to control, to overcome a characteristic of the victim.'" *Khalili*, 557 F.3d at 436 (quoting *Pilica v. Ashcroft,* 388 F.3d 941, 950 (6th Cir. 2004) (quoting *In re Kasinga,* 1996 WL 379826, 21 I & N. Dec. 357, 365 (BIA 1996))). "'[P]ersecution is an extreme concept that does not include every sort of treatment our society regards as offensive.'" *Japarkulova v. Holder*, 615 F.3d 696, 699 (6th Cir. 2010) (quoting *Ali v. Ashcroft,* 366 F.3d 407, 410 (6th Cir. 2004)). Although the INA does not define "persecution," case law establishes that it "'requires more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty.'" *Id.* (quoting *Mikhailevitch v. INS*, 146 F.3d 384, 390 (6th Cir. 1998)). Persecution might include, for example, "'detention, arrest, interrogation, prosecution, imprisonment, illegal searches, confiscation of property, surveillance, beatings, or torture.'" *Id.* (quoting *Gilaj v. Gonzales*, 408 F.3d 275, 285 (6th Cir. 2005)). "[P]hysical abuse is not an absolute prerequisite to a finding of persecution." *Id.* at 700. Nevertheless, threats alone amount to persecution only in exceptional cases. *Id.* at 701. "Only 'threats of a most immediate and menacing nature' can possibly qualify as past persecution." *Id.* (quoting *Boykov v. INS*, 109 F.3d 413, 416 (7th Cir. 1997)); *see also Lim v. INS*, 224 F.3d 929, 336-37 (9th Cir. 2000) (no past persecution where petitioner received death threats from dissident political group and was placed on its "death list," three of petitioner's colleagues who received similar threats were murdered, and petitioner was followed by unidentified men).

The evidence of purported persecution in this case consists of a kidnaping and a series of threats. Ralios Morente provides no details about the 1982 kidnaping, such as how long he was held or whether he was mistreated. It is therefore impossible to determine whether the incident rises to the level of persecution.

With regard to the threats, on a single occasion, Ralios Morente was confronted with a face-to-face threat by an armed assailant. He also received threats from guerillas because he did not want to provide them food or join them, but those threats are not described in any detail in the record. His family received anonymous threatening letters after he left Guatemala, although none of the letters were offered into evidence. The letters threatened that "they" were looking for Ralios Morente, and that he would be killed if he returned. Hence, the letters did not threaten immediate or imminent harm. Furthermore, there is no evidence that the letters contained threats against Ralios Morente's wife or children.

Ralios Morente and his family faced intimidation in the form of threats, but did not suffer physical harm as a direct result. In addition, there is no indication that the threatened harm was ever imminent. *See Japarkulova*, 615 F.3d at 701; *Li v. U.S. Att'y Gen.*, 400 F.3d 157, 165 (3d Cir. 2005) ("[U]nfulfilled threats must be of a highly imminent and menacing nature in order to constitute persecution."). We are not persuaded that this is an exceptional case in which such threats amount to persecution. The record evidence, even when viewed cumulatively, does not compel a conclusion that the harm Ralios Morente and his family experienced rose to the level of persecution.

## 2. Fear of future persecution

### a. Persecution by former guerillas

Ralios Morente argues that he has a well-founded fear of future persecution because former members of the guerilla movement still hold the same opinions about former members of the Civil Patrol. He notes that his family received threatening letters until they left Guatemala in 2002. He also contends that the State Department Reports do not conflict with this assertion as they describe ongoing strife relating to the Civil War. Moreover, Ralios Morente maintains that the Guatemalan National Police appear to be unable to prevent the harm he fears. Respondent contends that the BIA's finding is supported by substantial evidence because the Guatemalan Civil War ended in 1996 and there is no evidence that the former guerillas Ralios Morente fears remain active.

The BIA found Ralios Morente's concern that former guerillas will seek to harm him to be speculative. A.R. 4; J.A. 8. In another case in which the petitioner feared persecution from former guerilla members in Guatemala, this court observed:

> Despite formal cessation of the civil war, Sanic alleges that the fighting continues based on reports from his father. But, Sanic's speculations are not sufficient to compel a finding that the Guatemalan government and guerrillas continue to fight or that guerrilla forces remain active. Several sister circuits have held that the formal end to the Guatemalan civil war undermined or eliminated the threat of future persecution by guerrilla forces. *See, e.g., De Leon v. Gonzales,* 153 F. App'x 3, 6 n. 4 (1st Cir. 2005) (asylum applicant lacked well-founded fear of persecution on return to Guatemala because peace accords had been signed and the civil war was over); *Ordonez Tumax v. Ashcroft,* 79 F. App'x 642, 644 (5th Cir. 2003) (finding substantial evidence supported the IJ's finding that Guatemalan peace accord eliminated the possibility that petitioner would not be pressured to join guerrillas); *Ramos-Ortiz v. Ashcroft,* 70 F. App'x 68, 72 (3d Cir. 2003) (relying on the signing of peace accords in Guatemala to agree with IJ that petitioner did not face a well-founded fear of future persecution). In light of the end of the civil war and absence of evidence to suggest that guerrillas remain active, this Court is not

> compelled by the record to find that Sanic's fear of reprisal or recruitment by guerrilla forces is well-founded.

*Sanic v. Holder*, 343 F. App'x 62, 69 (6th Cir. 2009). The same principle applies in the instant case. By the time the BIA issued its decision in June 2009, the Civil War had been over for more than twelve years. As in *Sanic*, the end of the Civil War and the passage of time undercut Ralios Morente's assertion that former guerillas will seek to harm him because of his actual or imputed pro-government opinions. For these reasons, the record does not compel reversal of the BIA's finding that Ralios Morente failed to demonstrate a well-founded fear of future persecution by former guerillas.

The BIA also concluded that Ralios Morente failed to establish that the Guatemalan government is unwilling or unable to control the former guerillas who seek to harm him. "'When an asylum claim focuses on non-governmental conduct, its fate depends on some showing either that the alleged persecutors are aligned with the government or that the government is unwilling or unable to control them.'" *Khalili*, 557 F.3d at 436 (quoting *Raza v. Gonzales*, 484 F.3d 125, 129 (1st Cir. 2007)).

The State Department's 2005 Country Report portrays the Guatemalan police as "understaffed, poorly trained, and severely underfunded." A.R. 221; J.A. 185. The Report also describes "[c]orruption and substantial inadequacies in the police and judicial sectors, widespread societal violence, and impunity for criminal activity . . . ." A.R. 218; J.A. 181. Moreover, "the majority of serious crimes were not investigated or punished" and "less than 3 percent of reported crimes were prosecuted, and significantly fewer received convictions." A.R. 222; J.A. 186.

The conditions in Guatemala are far from ideal. Nonetheless, the Reports do not directly indicate that the government would be unable or unwilling to control the former guerilla members Ralios Morente fears. In fact, the 2005 Report states that the government regularly provided security for human rights activists who received threats, so some precedent for the protection of threat recipients exists. A.R. 225; J.A. 189. Further, with one exception,[4] there is no evidence that Ralios Morente or his family ever reported the threats they received to the Guatemalan police, let alone that the police failed or refused to investigate. *See Anyakudo v. Holder*, 375 F. App'x 559, 564 (6th Cir. 2010) (claim that government was unwilling or unable to protect petitioner deemed speculative and unsubstantiated where petitioner failed to report threats to authorities). Also absent from the record is any indication that the Guatemalan government or police are aligned with or sympathetic to former guerillas such that they would decline to act against them. *See Khalili*, 557 F.3d at 436. For these reasons, the evidence falls short of *compelling* a finding that the Guatemalan government would be unwilling or unable to protect Ralios Morente from persecution by former guerillas.

For the above reasons, we conclude that substantial evidence supports the BIA's finding that Ralios Morente did not demonstrate a well-founded fear of future persecution by former guerilla members.

### b. Persecution by the Human Rights Commission

Ralios Morente argues that he might face prosecution for his role in the Civil Patrol. He maintains that such prosecution would not be for past acts, but would constitute a pretext or show

---

[4]Ralios Morente reported the threat he received from Thomas. A.R. 166; J.A. 130. Ralios Morente believes Thomas was then punished. *Id.*

trial to gain political advantage. Respondent asserts that Ralios Morente has failed to establish that the Human Rights Commission would select him for prosecution for invidious reasons.

The BIA found that Ralios Morente failed to show that he would be maliciously prosecuted for his role in the Civil Patrol as opposed to legitimately prosecuted. Ralios Morente offers scant evidence to show that the Human Rights Commission will maliciously prosecute him. His evidence consists of his testimony that the Human Rights Commission is looking for him because two Civil Patrol members from other cantons are in jail, and because he was a Chief of the Civil Patrol, along with a vague assertion that the Human Rights Commission is "looking for people." A.R. 145, 148–49; J.A. 109, 112–13. Ralios Morente presents no evidence that the Human Rights Commission consciously seeks out innocent former Civil Patrol members to prosecute in show trials. Further, there is no evidence in the record to suggest that suspected human rights violators are not afforded at least a form of due process in proceedings initiated by the Human Rights Commission. Moreover, the BIA correctly distinguished between malicious prosecution, which may equate to persecution, and legitimate prosecution, which does not constitute persecution. *See Cruz-Samayoa v. Holder*, 607 F.3d 1145, 1151 (6th Cir. 2010). Therefore, if the Human Rights Commission prosecutes Ralios Morente for any human rights violations it reasonably suspects him to have committed, the prosecution would not amount to persecution. Ralios Morente's unsupported assertion that he will be prosecuted in a show trial, without more, does not compel reversal of the BIA's factual determination.

In sum, the BIA's determination that Ralios Morente failed to establish that he is eligible for asylum is supported by substantial evidence.

**C. Nondiscretionary Relief: Withholding of Removal and Protection under the CAT**

Ralios Morente also sought withholding of removal and protection under the CAT. Respondent argues that Ralios Morente waived his claims for nondiscretionary relief by failing to present any argument about the claims in his opening brief. Indeed, Ralios Morente confirms that he does not "seriously" assert his claims for nondiscretionary relief in the instant proceeding. Pet'rs' Br. at 1, n.1. We deem Ralios Morente to have waived his withholding of removal and CAT claims. *See Shkabari v. Gonzales*, 427 F.3d 324, 327 n.1 (6th Cir. 2005) (claims for nondiscretionary relief waived where petitioner mentioned them only in his statement of issues and failed to present any argument on the claims).

In any event, to qualify for withholding of removal under the INA, an alien must demonstrate that it is "more likely than not" that he will be persecuted if he returns to his home country. 8 C.F.R. § 1208.16(b)(2). Similarly, an alien seeking relief under the CAT must prove that it is more likely than not he will be tortured upon his return. 8 C.F.R. § 1208.16(c)(2). Since Ralios Morente cannot satisfy the standard for asylum, it follows he cannot meet the more stringent standards that govern his withholding of removal and CAT claims. *See Ndrecaj*, 522 F.3d at 677; *Sarr v. Gonzales*, 485 F.3d 354, 361–62 (6th Cir. 2007).

### III. CONCLUSION

For the foregoing reasons, we conclude substantial evidence supports the BIA's decision. We therefore **DENY** the petition for review.