NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0471n.06

No. 09-4364

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*Jul 12, 2011*

LEONARD GREEN, Clerk

MOHAMED AWAD,

  Petitioner-Appellant,

    v.

ERIC H. HOLDER, JR.,
ATTORNEY GENERAL

  Respondent-Appellee.

)
)
)
)
)
)
)
)
)
)
)

ON PETITION FOR REVIEW FROM THE
BOARD OF IMMIGRATION APPEALS

**BEFORE:**  **KEITH, CLAY, and COOK, Circuit Judges.**

**KEITH, Circuit Judge.** This case arises out of petitioner Mohamed Awad's appeal of the denial of his application for asylum, withholding of removal, and protection under the United Nations Convention Against Torture (CAT). Awad admits that he failed to file his application for asylum within the one-year limitations period. However, he asserts on appeal that he merits relief under the "extraordinary circumstances" exception to the one-year bar. Alternatively, he alleges that, as a member of the Palestinian political group Fatah, he should be granted withholding of removal and protection under the CAT because of persecution by Hamas, a rival political group in Palestine. The government alleges in response that we should dismiss the first claim for lack of jurisdiction and we should deny the second and third claims on the merits. For the reasons discussed below, we, hereby, **DISMISS** Awad's asylum claim as for lack of jurisdiction to review and **AFFIRM** the BIA's decision as to Awad's withholding of removal and CAT claims.

1

<u>FACTUAL BACKGROUND</u>

Mohamed Awad entered the United States on or about January 17, 2006 as a non-immigrant visitor. In June 2006, Awad married Michelle Thomas, an American citizen. Shortly thereafter, Thomas filed a marriage-based visa petition on Awad's behalf. Awad, concurrently, filed an application for adjustment of status to lawful permanent resident.

Sometime after Awad filed his application, he received a request from the Department of Homeland Security (DHS) requesting additional information related to his application. Awad did not return the form as his marriage had begun to fall apart. Realizing that he would no longer be eligible for a marriage-based visa, he applied for asylum, withholding of removal and protection under the CAT on April 9, 2007, more than one year after he initially arrived in the United States. His initial visa petition was denied on May 21, 2007.

Pursuant to a Notice to Appear filed by the Attorney General, the government instituted removal proceedings against Awad on July 23, 2007. The notice stated that Awad was eligible for removal as he had overstayed the initial non-immigrant visa pursuant to which he had entered the United States.

Awad's removal hearing was held on January 29, 2008. At the hearing, Awad conceded his removability, but reasserted the three aforementioned bases for relief. He did not designate a country of removal. The immigration judge (IJ) designated Palestine, or in the alternative, Israel as appropriate destinations.

During his hearing, Awad explained that he did not initially plan to apply for asylum upon arriving in the United States in January 2006. Rather, he obtained a tourist visa in Palestine simply to get away from "the trouble," after Hamas, a rival party, solidified their power. Administrative Record [A.R.], at 111. Awad explained that he applied for asylum in April 2007 as a result of the failure of his marriage and Hamas's success in elections in the West Bank, where he had lived.

Awad recounted that before coming to the United States, he worked as a chemist in a factory and sold medical equipment. As a salesperson, Awad sold chemicals later used for medical purposes. If the concentration of a chemical, such as hydrogen peroxide, was high, certain substances could be used to make explosives. Consequently, part of Awad's sales job required him to report to the Palestinian Authority, the government in the West Bank, any individual who attempted to buy suspicious substances. Awad reported at least six orders for chemicals that he believed could have been used to make bombs.

Awad explained that his job required him to make such reports; in fact, his license to work as a salesman was contingent upon his compliance. Awad also noted that he made such reports because he believes that violent acts undermine the Palestinian-Israeli peace process. Because Awad complied with the reporting requirement, Hamas considered him to be "a spy for the government." *Id.* at 120. Members of Hamas "follow[ed] [him] and they hurt [him], they spoke with [him] on [his] phone." *Id*. at 121. He believed that "Hamas burn[ed] [his] car, which was in the street," and broke his car's windshield. *Id*. Awad did not recall the date of the incident involving his car, but believed that it occurred in September or October 2005. Between 2003 and 2005, Awad received approximately ten threatening letters on his car and in his apartment stating that his actions aided a corrupt government. The letters, allegedly from members of Hamas, stated that Awad was a traitor, that he was supporting Israel, and that he would face death if he did not stop cooperating with the ruling Palestinian party. Hamas members also allegedly distributed similar letters throughout his neighborhood. The letters indicated that Awad would be killed if he continued his job.

Awad also expressed fear that Hamas would kill him because its members stabbed his brother, an active Fatah member. Though his brother was able to fight his attackers off on the first occasion, they returned a second time and murdered him. Awad's brother incited his attackers by allegedly refusing to allow Hamas to place political signs on his house. Hamas members also attacked Awad's youngest brother, also a Fatah member.

3

Awad did not leave his job until January 2006 when he arrived in the United States. Awad explained that approximately five days before he left the West Bank, Hamas won elections in the Gaza Strip, and fighting ensued between Hamas and Fatah. Awad's mother, father, oldest and youngest brothers, and sisters remain in the West Bank. The IJ found Awad's allegations regarding the threats he received to be credible.

On January 29, 2008, the IJ denied Awad's applications for asylum, withholding of removal, and relief pursuant to the CAT, but granted his request for voluntary departure from the United States. Noting that an applicant must file an asylum application within one year of arriving in the United States or establish changed or extraordinary circumstances, the IJ denied Awad's asylum application. The immigration judge found that Awad's marriage to a United States citizen and pending application for adjustment of status did not constitute an extraordinary circumstance.

As to Awad's request for withholding of removal, which is not subject to the one-year filing deadline, the IJ held that Awad failed to establish that he experienced past persecution or a clear probability that he would suffer future persecution on account of a protected ground. In the IJ's opinion, Hamas targeted Awad "because he was informing the police when their agents were attempting to obtain chemicals to build bombs." *Id.* at 85.

Finally, the IJ denied Awad's application for protection under the CAT, finding that there was no evidence that Hamas or any other entity would torture Awad in Palestine. Further, according to the IJ, even assuming that Hamas would torture Awad, there was no evidence that the Fatah-controlled security forces would approve of or ignore such abuse; rather, in light of the importance of his occupation, Fatah would likely attempt to protect him.

Awad timely appealed the IJ's rulings to the Board of Immigration Appeals (BIA). The BIA affirmed the IJ's determination that Awad was not eligible for asylum because he failed to file his application within one year of arriving in the United States, or to establish extraordinary or changed circumstances. *Id*. at 25. The BIA then addressed the merits of his claims for withholding of

No. 09-4364, *Awad v. Holder, Attorney General*

removal and protection under the CAT. The BIA specifically affirmed the IJ's finding that Awad's problems with Hamas stemmed only from his employment-dependent status as an informant. Finally, the BIA affirmed the denial of Awad's request for CAT protection. *Id*. at 26. Specifically, it found that Awad did not demonstrate a likelihood of torture by or with the acquiescence of a government official. *Id*. at 27.

Awad, subsequently, petitioned this court to review the BIA's decision.

## STANDARD OF REVIEW

"This court reviews any legal conclusions de novo and factual findings and credibility determinations for substantial evidence." *Zhao v. Holder*, 569 F.3d 238, 246 (6th Cir. 2009) (internal quotation marks and citation omitted). Under the deferential substantial evidence standard, factual findings of the Board, including credibility determinations, are "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Pablo-Sanchez v. Holder*, 600 F.3d 592, 594 (6th Cir. 2010) (quoting 8 U.S.C. § 1252(b)(4)(B)). Because the Board adopted the IJ's decision and provided additional reasoning of its own, we review the IJ's reasoning as supplemented by the BIA's analysis. *See Gilaj v. Gonzalez*, 408 F.3d 275, 282-83 (6th Cir. 2005) (per curiam).

## DISCUSSION

As noted, Awad raises two issues on appeal. First, he alleges that his filing of a separate application for transition to lawful permanent status, resulting from his marriage, should constitute an extraordinary circumstance and excuse his failure to file his application within the one-year time frame generally required of asylum applicants. Second, he alleges that the IJ and the BIA erroneously denied his motions for withholding of removal and protection under the CAT on the merits. We assess each claim in turn below.

5

### I. We Lack Jurisdiction to Review Whether Awad's Case Presents an Extraordinary Circumstance.

To be eligible for asylum, an alien must file his application for relief within one year of arriving in the United States. 8 U.S.C. § 1158(a)(2)(B). There are, however, two exceptions to this rule. First, if the conditions in the country from which the petitioner hails have changed, the one-year bar may not apply. *Id.* § 1158(a)(2)(D); 8 C.F.R. § 1208.4(a)(4). Second, extraordinary circumstances "may excuse the failure to file within the [one]-year period as long as the alien filed the application within a reasonable period given those circumstances." 8 C.F.R. § 1208.4(a)(5). As noted, Awad, on appeal, relies exclusively on the extraordinary circumstances exception.

The government contests this court's jurisdiction to hear Awad's appeal as to whether or not the pendency of a separate application for status as a lawful permanent resident constitutes an extraordinary circumstance excusing the applicant's failure to file within his or her first year in the United States.

Section 1158(a)(3) of Title 8 of the United States Code, as originally understood, precluded courts from reviewing a question dealing with the one-year time limit to file an asylum application. *See Castellano-Chacon v. INS*, 341 F.3d 533, 544 (6th Cir. 2003). Section 106(1)(A)(iii) of the REAL ID Act, Pub. L. 109- 13, 119 Stat. 231 (codified as amended in scattered sections of 8 U.S.C.) (2005) ("REAL ID"), however, partially modified this statutory mandate:

> Nothing in . . . any other provision of this chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section.

8 U.S.C. § 1252(a)(2)(D).

The Sixth Circuit examined the impact of the REAL ID Act on our jurisdiction in *Almuhtaseb v. Gonzales*, 453 F.3d 743 (6th Cir. 2006). In that case, the petitioner sought review of the BIA's denial of her asylum application on the grounds that it was time-barred, and that she failed to establish "changed circumstances" that would have excused the delay. *Id*. at 745-46. The Sixth

Circuit held that it lacked jurisdiction to review the BIA's decision as to whether circumstances had changed in the West Bank because "the argument regarding changed circumstances [was] predominantly factual." *Id*. at 748 n.3 (internal quotation marks and citation omitted). *See also Fang Huang v. Mukasey*, 523 F.3d 640, 650-51 (6th Cir. 2008). The Court emphasized, however, that the jurisdictional bar was not absolute, but rather, applied because the case called for "a particularized inquiry into the nature of a petitioner's claim," i.e., the degree of violence in the West Bank. *Almuhtaseb*, 453 F.3d at 748 n.3 (noting that where one petitioner's "argument regarding changed circumstances is predominantly factual . . . another petitioner might present legal or constitutional issues regarding a changed-circumstances claim that would be within our jurisdiction to consider" (internal quotation marks and citation omitted)).

Awad contends that, unlike *Almuhtaseb*, his case presents a question of law. Awad relies primarily on the fact that, unlike *Almuhtaseb* in which the court would have had to make a judgment as to the nature and degree of the violence in the petitioner's home country, there are no factual issues for this court to resolve. There are no questions as to what happened in this case; no versions of reality for this court to choose between. The question is simply whether the circumstances of this case, which are agreed upon, are sufficient to qualify for the statutory exception.

As we recently explained in *Khozhaynova v. Holder*, "questions involving the application of statutes or regulations to undisputed facts, sometimes referred to as mixed questions of fact and law" are not the pure questions of law over which we have jurisdiction. 641 F.3d 187, 192 (6th Cir. 2011) (internal quotation marks and citation omitted). Rather, our jurisdiction is reserved to purely legal questions, such as whether the alien's crime was an aggravated felony, *Patel v. Ashcroft*, 401 F.3d 400, 407 (6th Cir. 2005), or "whether the BIA used the correct standard in reviewing the IJ's decision and whether [the BIA] assigned to [the alien] the correct burden of proof." *Tran v. Gonzales*, 447 F.3d 937, 943 (6th Cir. 2006). Awad's argument is precisely the sort of argument we rejected in *Khozhaynova*, and therefore, it must fail.

Accordingly, we dismiss this claim for lack of jurisdiction.

## II.  The BIA Properly Denied Awad's Request for Withholding of Removal.

Awad also seeks review of the Board's denial of his application for withholding of removal under the Immigration and Nationality Act (INA).

Pursuant to § 241(b)(3) of the INA, the Attorney General may not remove an individual to a country if "the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." *Berri v. Gonzales*, 468 F.3d 390, 397 (6th Cir. 2006) (quoting 8 U.S.C. § 1231(b)(3)).  To prove he or she is eligible for withholding of removal, the petitioner must show that there is a clear probability that he or she would be subject to persecution if removed.  *Fang Huang*, 523 F.3d at 651.  A petitioner satisfies the "clear probability" standard by establishing that "it is more likely than not" that he or she would be subject to persecution if removed.  8 C.F.R. § 1208.16(b)(2).

Persecution is "the infliction of harm or suffering by the government, or persons a government is unwilling or unable to control, to overcome a characteristic of the victim." *Pilica v. Ashcroft*, 388 F.3d 941, 950 (6th Cir. 2004) (citing *In re Kasinga*, 21 I & N. Dec. 357 (BIA 1996)). "'[P]ersecution is an extreme concept that does not include every sort of treatment our society regards as offensive.'" *Japarkulova v. Holder*, 615 F.3d 696, 699 (6th Cir. 2010) (alteration in original) (quoting *Ali v. Ashcroft*, 366 F.3d 407, 410 (6th Cir. 2004)).  The INA does not define "persecution," but we have held that it "'requires more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty.'" *Id*. (quoting *Mikhailevitch v. INS*, 146 F.3d 384, 390 (6th Cir. 1998)).  Examples of persecution include "'detention, arrest, interrogation, prosecution, imprisonment, illegal searches, confiscation of property, surveillance, beatings, or torture.'" *Id*. (quoting *Gilaj*, 408 F.3d at 285).

### A.    Awad Cannot Demonstrate "Past Persecution."

The regulations governing withholding of removal provide that if the petitioner has demonstrated past persecution in the proposed country of removal, a rebuttable presumption arises that the petitioner's life or freedom will be threatened in the future if he or she is removed to that country.  8 C.F.R. § 1208.16(b)(1)(i).

Both the IJ and the BIA held that while they found Awad's allegations regarding his harassment by members of Hamas to be credible, the incidents combined were not sufficient to constitute past persecution.  The BIA did not explain its decision beyond citing a list of cases that it alleged supported this conclusion.

We agree with both courts that Awad cannot establish that he meets the standard for having suffered past persecution.  Awad, in support of his claim, relies on ten threatening letters he received and the firebombing of his car.  He presents no evidence of physical abuse or a deprivation of liberty.  While "physical abuse is not an absolute prerequisite to a finding of persecution," threats alone amount to persecution only in exceptional cases.  *Japarkulova*, 615 F.3d at 700-01.  "Only 'threats of a most immediate and menacing nature' can possibly qualify as past persecution."  *Id*. at 701 (quoting *Boykov v. INS*, 109 F.3d 413, 416 (7th Cir. 1997)).

Unquestionably, the threats Awad faced are troubling.  However, the Sixth Circuit has rejected such claims by persons who have suffered similar abuse.  For example, in *Morente v. Holder*, 401 F. App'x 17, 21-22 (6th Cir. 2010), the Sixth Circuit was presented evidence consisting of the petitioner's prior kidnapping and a series of threats he received.  With regard to the threats, on one occasion, the petitioner was confronted with a face-to-face threat by an armed assailant.  *Id*. at 22.  Additionally, his family received anonymous threatening letters after he left Guatemala.  *Id*. Nonetheless, the court concluded that the threats were not of such an immediate and menacing nature so as to find that the petitioner suffered past persecution.  *Id*. at 22-23.  Given that the circumstances

of *Morente* did not amount to past persecution, we cannot say that the evidence presented here – threatening letters and the firebombing of Awad's car – satisfies the standard either.

### B.      Awad Cannot Demonstrate That He Will Suffer Persecution.

Given that Awad cannot meet the standard for showing that he suffered past persecution, he must prove by a clear probability that he will, upon his return, suffer political persecution based on one of the five protected ground stated above.

Withholding of removal is "not available to an alien who fears retribution solely over personal matters." *Zoarab v. Mukasey*, 524 F.3d 777, 781 (6th Cir. 2008). That said, when an applicant demonstrates that he or she "was persecuted on the basis of more than one factor," the applicant is eligible for withholding of removal "so long as one of those factors is a protected ground under the INA." *Marku v. Ashcroft*, 380 F.3d 982, 988 n.10 (6th Cir. 2004).

The BIA rejected Awad's request on the grounds that he failed to establish a nexus between the harm he feared he would suffer and his political affiliation with Fatah, the protected class on which he relies.  Rather, the BIA found that based on the evidence before it, any threats he faced or would face were on account of his job – which required that he report persons purchasing large quantities of particular chemicals – not his political beliefs.

In significant regards, this case resembles the Sixth Circuit's decision in *Adhiyappa v. INS*, 58 F.3d 261 (6th Cir. 1995).  In *Adhiyappa*, the Sixth Circuit denied withholding of removal to a government informant who was threatened by the Tamil Tigers after he began to report individuals to the government as his job required.  *Id*. at 263-68.  Like this case, after he began reporting individuals, members of militant separatist groups came to his house, called him a traitor, and threatened to kill him if he continued to provide names to the authorities. *Id*. at 263.  Like this case, Adhiyappa alleged that the Tigers persecuted him on the basis of his personal support for the government.  *Id*. at 267.  The Sixth Circuit, applying the requisite deferential standard, found that

the petitioner had not shown that his persecutors acted on account of his political opinion. *Id*. at 267-68.

Likewise, we cannot find, based on the evidence Awad has presented, that the BIA's finding that Awad's persecutors were motivated by his employment was not supported by reasonable, substantial, and probative evidence. Awad presents no evidence of persecution before he began reporting individuals as he was required to do by his employment. Nor does he present any evidence that his alleged Hamas persecutors were in fact aware of his political beliefs. Rather, any alleged persecution began only after he began reporting individuals. In fact, the threatening letters he received stated as much; the letters specifically threatened Awad's safety if he did not stop reporting individuals. Furthermore, while some of the letters accused Awad of collaborating with Fatah and Israel, the specific collaboration that the letters obviously referred to was the reporting done in connection with his employment. Given the facts of this case, it seems likely that Awad's persecutors would have threatened anyone who reported them, regardless of their political beliefs.

Awad, in response, cites the Sixth Circuit's recent decisions in *Al-Ghorbani v. Holder*, 585 F.3d 980 (6th Cir. 2009), and *Haider v. Holder*, 595 F.3d 276 (6th Cir. 2010). Both cases are distinguishable. In *Al-Ghorbani*, the petitioner married the daughter of a military general in his native country of Yemen without the general's permission. 585 F.3d at 985. In response, the general shot his own son and threatened to kill his daughter and the petitioner. *Id*. at 985-86. The Sixth Circuit found that the general's personal motives could not be unraveled from his motives based on the petitioner's social class, because the precise reason that he opposed the marriage was because of the social class to which the petitioner belonged. *Id*. at 997-98. This case is distinguishable. As noted above, here Awad's persecutors do not seek to hurt him because he was a member of Fatah who began to report them. Rather, the evidence available – namely, the timing of the threats he received and his persecutors' lack of knowledge as to his individual beliefs – seems to support the

BIA's finding that his persecutors would have persecuted him once he began to report them regardless of Awad's personal political beliefs.

The Sixth Circuit's decision in *Haider* is even less relevant. In *Haider*, the court imputed a political opinion to the petitioner on the grounds that police in his home country harassed him and assumed that he associated with terrorist groups. 595 F.3d at 285-86. Unlike this case, in *Haider*, no evidence of an alternate justification for the police's actions was available. Thus, Awad failed to demonstrate either past persecution or a fear of future persecution such that he would be entitled to withholding of removal under the INA.

Accordingly, we affirm the BIA's denial of Awad's petition.

### III.     Awad Does Not Qualify for Protection Under the Convention Against Torture.

Finally, Awad alleges that he should be granted protection under the CAT. An applicant for withholding of removal under the CAT must establish that he more likely than not would be tortured in the proposed country of removal. 8 C.F.R. § 208.16(c)(2). The applicant's testimony, "if credible, may be sufficient to sustain the burden of proof without corroboration." *Id.* In assessing the risk of torture, we must consider: "[e]vidence of past torture inflicted on the applicant; . . . [e]vidence that the applicant could relocate to a part of the country where he or she is not likely to be tortured; . . . [e]vidence of gross, flagrant or mass violations of human rights within the country of removal, where applicable; and . . . [o]ther relevant information regarding conditions in the country of removal." *Id.* § 208.16(c)(3).

Neither party nor the BIA provides much discussion of Awad's final claim. The claim is not mentioned in either party's brief beyond Awad's single mention of it and the government's response that, on this account, Awad has waived the claim. The BIA's opinion, likewise, merely regurgitated the standard that Awad is required to meet and stated that he had not satisfied it. Accordingly, we are left with the opinion of the IJ who found that Awad had failed to establish that he would be tortured upon returning to the West Bank and that even if he had there is no evidence it would be

done with the acquiescence of Fatah, which would likely protect him because of his employment position.

Based on the record before the court, we cannot find that the IJ incorrectly concluded that Awad would not be tortured with the acquiescence of a government official. We need not decide whether the evidence was sufficient to support a finding that Awad faced a threat of torture. As the IJ noted, even if he did, there is no evidence to support the conclusion that the Palestinian Authority would not act to protect him, particularly in light of the sensitive nature of his employment.

### CONCLUSION

For the foregoing reasons, we, hereby: a) **DISMISS** the petition to review the BIA's denial of Awad's claim for asylum as for lack of jurisdiction; and b) **AFFIRM** the BIA's denial of Mohamed Awad's claims for withholding of removal and protection under the United Nations Convention Against Torture.